UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

---

| | |
|---|---|
| **THELMA TINSLEY, personal representative of the Estate of Anna Williams,** ) ) ) **Plaintiff,** ) v. ) **CROSSPOINT HUMAN SERVICES, INC.,** ) ) **Defendant.** ) | Case No. 02-CV-2275 |

## ORDER

On December 30, 2002, Plaintiff, Thelma Tinsley, personal representative of the Estate of Anna Williams, filed a Complaint (#1) against Defendant, Crosspoint Human Services, Inc. Plaintiff alleged that Defendant violated the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.) and the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.) when it terminated the employment of Anna Williams on April 30, 2001. Plaintiff alleged that Williams was 61 years old at the time of her termination and that Williams suffered from diabetes and kidney disease requiring dialysis. Plaintiff alleged that Williams was terminated on the basis of her age and because she was regarded as having disabilities.

On June 11, 2004, Defendant filed a Motion for Summary Judgment (#15) and a Memorandum of Law in Support (#16). Defendant did not include a Statement of Material Facts Claimed to Be Undisputed or any documentation to support its Motion. On July 2, 2004, Plaintiff filed a Response to Motion for Summary Judgment (#19). Plaintiff asked that Defendant's Motion be denied because of Defendant's violation of the Local Rules governing the filing of motions for summary judgment. In the alternative, Plaintiff argued that genuine issues of material fact existed

which precluded summary judgment and attached documentation to support her argument. On July 19, 2004, Defendant filed its Reply (#20) and attached documents. This court has carefully reviewed the arguments of the parties and the documents provided by the parties in support of their arguments. Following this careful and thorough review, Defendant's Motion for Summary Judgment (#15) is DENIED.

## FACTS

Plaintiff submitted deposition transcripts and other documents in her Response to Motion for Summary Judgment and Defendant submitted additional documents in its Reply. The following recitation of facts is derived from the documentation submitted by the parties.

Anna Williams was hired by Defendant on January 7, 1997. Defendant operates group homes for mentally ill and developmentally disabled individuals. Williams was a nurse and, prior to her employment with Defendant, had experience working at the VA hospital. It is undisputed that Williams was a satisfactory employee and received very good evaluations of her job performance. In the spring of 2001, Thomas Pollock, Defendant's executive director, decided that Defendant needed to undergo a reorganization. All of Defendant's employees were told that their employment was being terminated and they had to reapply for a position with Defendant and undergo an interview process. At that time, Williams was 61 years old and had been employed by Defendant for more than four years.

Pollock testified that some positions, including Williams' position as counselor, were discontinued as part of the reorganization. However, Pollock testified that Williams was qualified for a "tech" position with Defendant. Pollack stated that the reason for the reorganization was so that Defendant would have only full time employees, for the purpose of minimizing turnover, and

to refocus on encouraging its residents to become independent. However, Pollock testified that he had no reason to believe that Defendant's existing employees were not involved in the recovery process with residents. Pollock also testified that he was not aware whether there was more turnover with part time as opposed to full time employees. He just "figured that full time employees with health benefits and a higher wage rate would have a likelihood of staying longer." After the reorganization announcement, Williams was interviewed and, on April 10, 2001, was informed that she failed to make the cut. Pollock testified that he was aware that Williams sometimes used a cane and also testified that Williams told him she was diabetic after the reorganization interviewing process. Pollock stated that Williams told him she preferred to work third shift because she was going in for dialysis. Pollock testified that he did not know whether Williams told the person interviewing her, who would have been Jeana Johnson or Lisa Rhodes, the reason she had applied for third shift. According to Defendant, Williams voluntarily left her employment with Defendant and last worked on April 9, 2001.

Stephanie McCreary, who was an employee of Defendant until April 2001, testified that many of Defendant's employees were very upset by the reorganization. She testified that it was "odd" how it was handled and the "weirdest thing" she had ever dealt with in her life. McCreary testified that, after the reorganization, employees were retained who did not have a good attitude about teaching residents to become independent. McCreary testified that Mary Potts was an example of an employee who did not have a good attitude and was retained. McCreary also testified that older employees, such as Williams, were very reliable employees who had no turnover. McCreary stated that the higher turnover was with younger employees.

With its Reply, Defendant submitted a summary of the reorganization. This summary

showed that nine employees who were more than ten years younger than Williams were retained following the reorganization. The summary also showed that Mary Potts was 47 years old at the time she was retained and had not informed Defendant of any handicapping condition.

On October 26, 2001, Williams filed a charge of discrimination with the Illinois Department of Human Rights. Williams claimed that she was terminated on the basis of her age, her disability, and her race. Williams died on January 10, 2002, one week after having her leg amputated. The EEOC issued a Notice of Right to Sue on September 30, 2002. The EEOC stated that it had "found reasonable cause to believe that [Williams'] charge of employment discrimination is true" but had been unable to achieve a conciliation agreement with Defendant. On December 30, 2002, Plaintiff, as representative of Williams' estate, filed her Complaint (#1) in this court.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000), quoting Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999). In making this determination, the court

must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). In addition, the summary judgment standard is applied with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility. Michas, 209 F.3d at 692.

Rule 7.1(D)(1) of the Local Rules of the Central District of Illinois states that any party filing a motion for summary judgment must include a section of "Material Facts Claimed to Be Undisputed" which includes a numbered list of "each undisputed material fact which is the basis for the motion for summary judgment." In addition, the party must attach "[a]ny documents, affidavits or excerpts of transcripts claimed to establish each fact." Rule 7.1(D) also provides:

> All motions for summary judgment, responses and replies shall comply with the requirements of this rule. Any filings not in compliance shall be stricken by the court.

The Seventh Circuit has repeatedly upheld the strict enforcement of this type of rule regarding summary judgment motions. See Waldridge, 24 F.3d at 922. The Seventh Circuit in Waldridge noted that the statements of facts required by local rules (such as Rule 7.1(D)(1)) are "roadmaps" intended to "point the court to the specific evidence in the record that supports a party's position." Waldridge, 24 F.3d at 923. Therefore, the factual statement required by local rules "is not a mere formality." Waldridge, 24 F.3d at 924. The Seventh Circuit specifically stated that "without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." Waldridge, 24 F.3d at 923.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its Memorandum of Law in Support of Motion for Summary Judgment (#16), Defendant

argued that it is entitled to summary judgment because Williams was terminated due to the reorganization. Defendant asserted that reorganization did take place, and some former employees were rehired and some were not. Defendant stated that Plaintiff has no evidence that Williams was not retained because of her age or disability. As noted, Defendant did not include a Statement of Material Facts Claimed to Be Undisputed or any documentation in support of its arguments.

This court concludes that Defendant's Motion for Summary Judgment can be denied on this basis alone.[1] See Waldridge, 24 F.3d at 923. However, this court has reviewed the documents submitted by Plaintiff with her Response and by Defendant with its Reply and agrees with Plaintiff that genuine issues of material fact exist which preclude the entry of summary judgment in favor of Defendant.

## A.  AGE DISCRIMINATION

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000). An employee may establish a claim of age discrimination in employment by using direct or indirect evidence. Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). In this case, Plaintiff is proceeding under the indirect method.[2]

---

[1] This court notes that, it its Reply, Defendant argued that, if this court decided to strike its Motion for Summary Judgment because of its failure to comply with Rule 7.1(D), it would "simply request" that its right to refile "remain intact." However, the dispositive motion deadline in this case was June 11, 2004. Therefore, because the deadline has long passed, Defendant has no right to refile a Motion for Summary Judgment.

[2] Defendant is correct that Plaintiff has no direct evidence of discrimination.

In order to proceed under the indirect method, plaintiffs utilize the burden shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas approach, a plaintiff must first establish a prima facie case of age discrimination. Schuster v. Lucent Tech., Inc., 327 F.3d 569, 574 (7th Cir. 2003). This requires proof of four elements: (1) the employee was a member of the protected class (age 40 or older); (2) the employee was performing at a satisfactory level; (3) the employee suffered an adverse employment action; and (4) the employee was treated less favorably than younger, similarly situated employees. See Schuster, 327 F.3d at 574. In situations involving a true reduction in force, the fourth element requires the plaintiff to present evidence to show that similarly situated employees who were substantially younger than her were treated more favorably in the reduction in force. See Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000); Perez v. Colwell Sys., Div. of Deluxe Corp., 83 F. Supp. 2d 976, 982 (C.D. Ill. 1999). To satisfy the "substantially younger" requirement, the relevant individual must be at least 10 years younger than the plaintiff. Radue, 219 F.3d at 619.

If the plaintiff satisfies the burden of establishing a prima facie case, a presumption of discrimination arises and the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Schuster, 327 F.3d at 574; Pitasi, 184 F.3d at 716. If the defendant meets this requirement, the plaintiff employee must then show that the employer's proffered reason is a pretext for discrimination. Schuster, 327 F.3d at 574; Pitasi, 184 F.3d at 716.

### 1. PRIMA FACIE CASE

In this case, there is no dispute that Williams was in the protected over-40 age group, that she was performing satisfactorily and that she suffered an adverse employment action, the

7

termination of her employment.[3] This court also concludes that Plaintiff has shown that similarly situated, substantially younger employees were treated more favorably. Defendant's summary of the reorganization shows that nine employees who were more than ten years younger than Williams were retained following the reorganization. Therefore, this court concludes that Plaintiff has provided sufficient evidence to make out a prima facie case of age discrimination.

### B. PRETEXT

Defendant also argues, however, that even if Plaintiff can establish a prima facie case of discrimination, Defendant has stated legitimate, nondiscriminatory reasons for Williams' termination which Plaintiff cannot establish were a pretext for discrimination. This court does not agree.

Defendant's stated reason for Williams' termination is the fact that Defendant underwent a reorganization. Plaintiff claims that she has presented evidence that this stated reason was a pretext for discrimination because the stated reasons for the reorganization, to reduce turnover and to refocus on encouraging its residents to become independent, did not apply to Williams.

To show pretext in a case involving a reduction in force, "an employee must establish that an improper motive tipped the balance in favor of discharge" or that "the employer did not honestly believe in the reasons it gave for firing him." Schuster, 327 F.3d at 574, quoting Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 876 (7th Cir. 2002).

This court concludes that Plaintiff has shown that the reorganization in this case was handled

---

[3] In its Reply, Defendant argued, for the first time, that Williams did not suffer an adverse employment action because all employees were told they had to reapply due to the reorganization and because she voluntarily left her employment with Defendant. This court concludes that there is no merit to this argument. Williams was interviewed and informed that she did not make the "cut." Accordingly, this court concludes that the evidence supports a conclusion that Williams' employment was terminated and she therefore suffered an adverse employment action.

in a very questionable manner and that there are reasons to doubt the explanations given by Pollock for the reorganization and for Williams to not make the "cut." This court concludes that genuine issues of material fact exist regarding whether Williams was, in fact, terminated on the basis of her age. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim of age discrimination.

## II. ADA

To establish disability discrimination in violation of the ADA, Plaintiff must show: (1) Williams was disabled within the meaning of the ADA; (2) Williams was qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) Williams suffered from an adverse employment action because of the disability. Dyke v. O'Neal Steel, Inc., 327 F.3d 628, 632-32 (7th Cir. 2003); Moore v. J.B. Hunt Transport, Inc., 221 F.3d 944, 950 (7th Cir. 2000). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); Dyke, 327 F.3d at 632; Moore, 221 F.3d at 950. In this case, Plaintiff contends that Williams was regarded as having disabilities.

Defendant argues that it is entitled to summary judgment on this claim because Williams' employment was terminated because of the reorganization, not because of her disabilities. This court disagrees with Defendant and concludes that genuine issues of material fact exist regarding Plaintiff's claim under the ADA. The documentation in this case shows that Pollock was aware prior to the reorganization that Williams sometimes used a cane. Pollock also testified that Williams informed him, after the interview process, that she was diabetic and wanted to work third shift

because she needed to go in for dialysis treatments.[4] The summary of the reorganization prepared by Defendant did not state that any of the employees retained following the reorganization had any disabilities. Moreover, this court has already found that there are reasons to doubt the explanations given by Pollock for the reorganization and for Williams to not make the "cut." For these reasons, this court concludes that genuine issues of material fact exist regarding whether Williams was, in fact, terminated because Defendant regarded her as having a disability. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim of discrimination under the ADA.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#15) is DENIED.

(2) This case remains scheduled for a final pretrial conference on September 7, 2004, at 2:30 p.m. and for a jury trial on September 20, 2004, at 9:00 a.m.

ENTERED this 20th day of August, 2004

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE

---

[4] In its Reply, Defendant noted that Pollock testified that he only found out that Williams was a diabetic after the interview process was over, so that could not have been the reason that Williams failed the initial cut. However, Pollock also testified that he did not know whether Williams informed her interviewer of the reason that she wanted to work third shift. Viewing the evidence in the light most favorable to Plaintiff, this court cannot agree that the evidence showed that Defendant did not become aware of Plaintiff's diabetes and need for dialysis prior to its termination decision.